UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re:<br><br>Mary Brickell Village Hotel, LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-17103 (RAM) |

**DECLARATION OF PEDRO F. VILLAR**
**IN SUPPORT OF THE CHAPTER 11 PETITION AND FIRST DAY PLEADINGS**

I, Pedro F. Villar, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief, including the information included in the exhibit attached hereto:

**Introduction**



1. The above-captioned Debtor is the owner of Aloft Miami Brickell, a Marriott International hotel brand (the "Hotel"). The Hotel is centrally located in the heart of Brickell, Miami's Financial District. This brand redefined the hospitality segment and offered an innovative

---

[1] The last four digits of the Debtor's tax identification number are 7701. The Debtor's principal address is 1001 SW 2nd Avenue, Miami, FL 33130.

style combined with services that reflected the lifestyle of today's business traveler. The Hotel sits one block away from Brickell's Mary Brickell Village and one of Miami's major public transit system's station. The Hotel is also within walking distance to the world-renowned Brickell City Centre. The Hotel is well-maintained, modern, and consists of fourteen stories, one hundred and sixty rooms, a fitness center, a large pool deck, a nine-hundred-square-foot terrace for events, and one hundred valet parking spaces.

2. Last year, the Hotel was confronted with its most serious challenge since it opened its doors during the Summer of 2013: the COVID-19 pandemic and the restrictions placed on businesses, particularly those in the hospitality industry. As this Court is aware, to "flatten the curve," and minimize the spread of COVID-19, many federal, state, and local governments have ordered the closure of schools, parks, stores, restaurants, and other "non-essential" businesses, through, among other similar mandates, "Shelter-in-Place" orders.

3. Throughout, the Hotel maintained its value in excess of $30 million and is entirely unencumbered, but for its $17 million mortgage. Shortly after acquiring said mortgage from its affiliate, which served as the Loan's special servicer, the mortgagee, Torchlight 2, involuntary accelerated the Loan, and commenced an aggressive foreclosure action against the Debtor, through which it sought to seize the Hotel's income and collect a multi-million dollar prepayment fee. Torchlight 2 is, and has always been, unwilling to engage in negotiations to achieve a workout.

4. The Debtor is seeking relief from this Court to preserve the going-concern value of their business and dozens of full-time jobs, implement a reorganization, through which the Debtor intends to exercise its rights to cure any alleged defaults related to the mortgage, subject to its legal and equitable arguments for reductions in respect thereof, and continue operating in the ordinary course.

5.  In short, this case is set to poise the Hotel for success.

## Background

6.  My name is Pedro Villar. I am over the age of eighteen and am competent to testify.

7.  I act as the manager of Mary Brickell Village Hotel, LLC, as debtor and debtor in possession (the "Debtor," the "Hotel" or "MBVH"), and operate the company through the management company, ARVI Management Corporation, a Florida corporation. I have served in this role to the Company for approximately eight (8) years. I built the Hotel.

8.  I am familiar with and knowledgeable of the Debtor's day-to-day operations, business, and financial affairs, and books and records, as well as the circumstances leading to the commencement of this chapter 11 case (the "Chapter 11 Case"). I submit this declaration (this "Declaration") to assist the Court and other parties in interest in understanding the circumstances and events that led to the commencement of the Chapter 11 Case and in support of the motions and applications that the Debtor filed with the Court, including the "first-day" pleadings filed concurrently herewith (the "First Day Pleadings"). I am authorized to submit this Declaration on behalf of the Debtor.

9.  Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtor, my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial condition, or from my discussions with the Debtor's proposed counsel, Pack Law, P.A. ("Pack Law"). If called upon to testify, I would and could testify competently to the facts set forth in this Declaration on that basis.

3

10. I am advised by counsel that this Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334, and that venue is proper in the United States Bankruptcy Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Debtor's Prepetition Corporate and Capital Structure

### I. Corporate Structure.

11. The Debtor, Mary Brickell Village Hotel, LLC, is a limited liability company organized and headquartered in the State of Florida. The Hotel is managed by ARVI Management Corporation, a Florida corporation, and is manager managed. Jessica L.M. Woodward, of Corporation Service Company ("CSC"), serves as the Debtor's Independent Manager.

### II. Prepetition Capital Structure.

12. The Debtor's capital structure is relatively straightforward and consists of secured debt, unsecured debt, and equity.

#### A. Secured Debt.

13. The Debtor's secured debt consists of a first-lien, secured loan presently owned by DF VII REIT Holdings, LLC, a Delaware limited liability company, in the principal amount of $17,000,000 which forms the basis of that certain foreclosure action that was commenced in the Eleventh Judicial Circuit Court, in and for Miami-Dade County, Florida, Case No. 2021-006249-CA-01, styled as *DF VII REIT HOLDINGS, LLC v. MARY BRICKELL VILLAGE HOTEL, LLC, et al.* (the "Foreclosure Action").

#### B. Unsecured Debt and Equity.

14. The Debtor's unsecured debt primarily consists of trade payables, and the Debtor's equity consist of those membership interests described in the Chapter 11 Petition [Docket No. 1] in Mary Brickell Village Hotel, LLC.

### III. The Debtor's Key Asset.

15. The Debtor's principal balance sheet assets are real property (the Hotel itself, which includes a full-service bar, and the land on which it sits) and the personal property located throughout the Hotel (i.e., the Fixtures, Furniture and Equipment ("FF&E")). In addition, the Hotel has cash on hand of approximately $1 million.

### IV. Key Events Leading to the Chapter 11 Case.



**A. Highly Diminished Revenue and the Debtor's Inability to (i) Utilize Reserves for Debt Service or (ii) Actively Negotiate With Its Lender.**

16. From the inception of the mortgage loan in 2012 and until the onset of COVID, the Hotel did not miss one single loan payment. When COVID-19 arrived, in March of 2020, the loan was supported by hundreds of thousands of dollars in reserves. At the onset of the pandemic, the Debtor proactively reached out to Wells Fargo, the then-master servicer of the Loan to ensure that the parties could contingency plan, and amicably forge a go-forward path in case loan service became difficult during COVID.

17. Months passed until MBVH would learn that Torchlight Special Services, LLC, the then-special servicer of the Loan ("Torchlight 1"), was ultimately responsible and Wells Fargo would, in fact, not be assisting with any modification whatsoever in respect of the Loan. In the meantime, the Hotel was unable to operate. Communication with Torchlight 1 was close to

impossible, until the Hotel communicated to Wells Fargo that it could no longer wait for Torchlight 1 to assist, and wanted to bring all payments current. Only then did Torchlight 1 become responsive to the Hotel and began demanding default rate interest, special servicer fees and legal fees. The Hotel disputed many of these amounts, particularly because representatives of the Hotel reasonably relied on representations made by Wells Fargo that they would help the Hotel, and, at minimum, that they would help to liaise with Torchlight 1.

18. From Summer 2020 through Fall 2020, MBVH engaged in a negotiation with Torchlight 1. I strongly believe that based on the frequency of the Debtor's communication with Torchlight 1 in contrast to Torchlight 1's frequency of its communication with the Debtor during this time, Torchlight 1 had no sincere interest in negotiating in good faith and had decided early on in the process that they wanted to seize the Hotel.

19. After one final information request that occurred during the first week of November 2020, Torchlight 1 went dark.

20. Four months would pass until, in February 2021, counsel to DF VII REIT Holdings, LLC ("Torchlight 2") informed MBVH that Torchlight 2 acquired the Loan from its affiliate. Torchlight 2 demanded that MBVH pay Torchlight 1's legal fees and execute a pre-negotiation letter as a condition to MBVH communicating with Torchlight 2, which letter contained a purported pre-release of Torchlight 2 from any claims held or that could be held against it by MBVH, Mr. Arocha, and Mr. Villar, the guarantors under the Loan.

21. Within about one week, after execution of the pre-negotiation letter, Torchlight 2 commenced its foreclosure action against the Hotel. MBVH has made no headway in negotiating with Torchlight 2 and is the of the view that Torchlight 2's legal positions are legally unsound, and even potentially expose a nefarious business model through which a lender can seemingly acquire

a loan from itself (in its role as a fiduciary) and turn around within a matter of weeks and demand an approximately 25% return on its investment at the expense of the borrower and its business. During a global pandemic.

### B. Other Litigation.

22.     In addition to the litigation against Torchlight 2, the Debtor has been wrongly included in an active arbitration filed by Eastern National Bank.  This arbitration has been an unnecessary distraction and ongoing drain on MBVH's resources, notwithstanding that MBVH has offered virtually everything Eastern National Bank has asked of it through its relief requested. Relief to be dismissed has been sought in the arbitration, but the tribunal has not yet heard the matter.  The Hotel is also party to other matters that involve (i) a personal injury claim that took place at the Hotel and (ii) ADA compliance disputes, respectively.

### C. Next Steps, and the Commencement of the Chapter 11 Case.

23.     The Debtor believes that optionality is its best path forward and is the only way to achieve 100-cent recoveries for all stakeholders in MBVH.  I am imbued with the belief that this can only occur in a chapter 11 proceeding, through which the Debtor plans to either (a) cure alleged defaults under the Loan and reinstate the Loan on fair market terms, or (b) pay off Torchlight 2 in full, but only after right-sizing the alleged outstanding liability under the Loan (after, among other things, asserting the Debtor's legal and equitable rights against all parties in interest, including Torchlight 2).

24.     With such plan in place, and with the consent of each of the Debtor's members, its Manager, and its Independent Manager, Corporation Service Company, the Debtor is confident that the Chapter 11 Case will pave a clear path forward for the Hotel's long term success.

**The Debtor's First Day Pleadings**

25.  The First Day Pleadings seek relief to allow the Debtor to meet necessary obligations and fulfill its duties as a debtor in possession.  I am familiar with the contents of each First Day Pleading and believe that the relief sought in each First Day Pleading is necessary to enable the Debtor to operate in chapter 11 with minimal disruption or loss of productivity and value and best serves the Debtor's estate and creditors' interests.  The facts set forth in each First Day Pleading are incorporated herein by reference.  The First Day Pleadings include the following:

a. *Debtor's Emergency Motion for Entry of Interim and Final Orders  (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363,(II) Deeming Its Secured Lender Adequately Protection Pursuant to 11 U.S.C. §§ 361 and 363, and (III) Scheduling a Final Hearing* (the "<u>Cash Collateral Motion</u>");

b. *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Operate Its Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Business Forms, (II) Authorizing, but Not Directing the Debtor to (A) Maintain Existing Customer Programs and (B) Honor Prepetition Customer Obligations,  and (III) Granting Related Relief* (the "<u>Cash Management Motion</u>");

c. *Debtor's Motion for Entry of an Order (A) Authorizing the Debtor to (I) Pay Prepetition Employee Wages, Salaries, and Other Compensation, and (II) Continue Employee Benefits Programs, and (B) Granting Related Relief* (the "<u>Wages Motion</u>");

d. *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Prepetition Taxes and Fees and (II) Granting Related Relief* (the "<u>Taxes Motion</u>");

e. *Debtor's Motion For Entry Of Interim And Final Orders (I) Authorizing, but Not Directing the Debtor to (A) Continue Honoring Its Obligations Under Insurance Policies Entered into Prepetition and Satisfy Prepetition Obligations Thereto and (B) Renew, Supplement, Modify, or Purchase Coverage, and (II) Granting Related Relief* (the "<u>Insurance Motion</u>"); and

f. *Debtor's Motion for Entry of  an Order (I) Prohibiting Utility Providers  from Altering, Refusing, or Discontinuing Utility Services,  (II) Deeming Utility Providers Adequately Assured of Future  Performance, (III) Establishing Procedures For Determining  Adequate Assurance of Payment, and (IV) Granting Related Relief* (the "<u>Utilities Motion</u>").

26.     The First Day Pleadings seek authority to, among other things, honor employee-related wages and benefit obligations, use cash collateral, ensure the continuation of the Debtor's cash management system, and maintain other operations in the ordinary course of business.  I believe all relief sought in the First Day Pleadings is critical to the continued success of the Debtor during this Chapter 11 Case and ultimately, of benefit to all stakeholders.

27.     Several of the First Day Pleadings request authority to pay certain prepetition claims against the Debtor.  I understand that Rule 6003 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, that the Court shall not consider motions to pay prepetition claims during the first 21 days following the filing of a chapter 11 petition, "except to the extent relief is necessary to avoid immediate and irreparable harm."  In light of this requirement, the Debtor has narrowly tailored its requests for immediate authority to pay certain prepetition claims to those circumstances where the failure to pay such claims would cause immediate and irreparable harm to the Debtor and its estate.  The Debtor will defer seeking other relief to subsequent hearings before the Court.

[*Remainder of Page Intentionally Left Blank*]

28. The above describes the Debtor's business and capital structure, the factors that precipitated the commencement of this Chapter 11 Case, and the critical need for the Debtor to obtain the relief sought in the First Day Pleadings.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 21, 2021
Miami, FL

By: /s/ Pedro Villar
Name: Pedro Villar

**Exhibit A**

**Mary Brickell Village Hotel, LLC's Organizational Chart**

Respective Ownership Interest Percentages In Mary Brickell Village Hotel, LLC

| Brickell Hotel Properties, LLC | Hotel Promotions, LLC | Country Lake, LLC | Montmarte, LLC | 11 Holdings, LLC | Brickell American Hospitality, LLC | Arvi Management Corp. |
|---|---|---|---|---|---|---|
| 13.08% | 51.92% | 14.5% | 5% | 10% | 5% | 0.5% |

Mary Brickell Village Hotel, LLC